## LOUIS ANTHONY KIRSCH *v.* STATE OF MARYLAND

[No. 110, September Term, 1970.]

*Decided December 28, 1970.*

The cause was argued before Murphy, C.J., and Anderson and Powers, JJ.

*Alexander R. Martick* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Fred Grant* and *Joseph B. Harlan, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant claims that his constitutional right to be secure from an unreasonable search and seizure was violated when a police officer, without a search warrant, invaded his privacy while he was in a locked men's room in a gas station and secured evidence of his guilty control of heroin and narcotic paraphernalia.[1]

The evidence at trial showed that on December 7, 1968 at 9:30 p.m., Officer Ronald Arnold went to the gas station in response to a call for assistance from the station attendant. Upon arrival, he met the attendant who told him "there were three males in the restroom, and they had been in there for approximately thirty minutes, and didn't know whether anything was wrong with them or not." Arnold testified that the attendant handed him a key, and while he (Arnold) didn't know whether there was anybody in the rest room, "I went around to the restroom, and I unlocked the door." Upon entering, Arnold observed three men standing inside with their backs to the door.[2] While he was told by one of the men that the rest room was being used, he immediately noticed appellant place a needle and syringe into his coat pocket, and one of the other men drop an Anacin tin (later found to contain opium) into the corner of the room. The men were then arrested.

Appellant's motion to suppress the incriminating evidence was denied by the trial judge, who stated: "* * * he [the officer] had a perfect right to enter; and, in fact, he did it by invitation of the man in charge of the filling

---

1. Appellant was convicted of these offenses at a court trial and sentenced to concurrent two-year terms of imprisonment.
2. The rest room contained a toilet in an enclosed stall, a urinal, and a sink.

station who gave him the key and asked him to enter. He seemed to be concerned about what might be wrong with —or perhaps the three young men were ill or something else had happened to them, because they had been in there an abnormally long time, 30 minutes. So, the officer was simply doing what the person in charge of the premises asked him to do. Once he opened the door, he had a right to look around, the policeman is not required to close his eyes, and so if he happened to see the object dropped on the floor by one of the persons there, he had a perfect right to pick it up, abandoned property."

On the facts of this case, we think the motion to suppress was properly denied.

In *Hoffa v. United States,* 385 U. S. 293, 301, it was held that the Fourth Amendment protects:

> "* * * the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home, or his office, his hotel room, or his automobile. There he is protected from unwarranted governmental intrusion. And when he puts something in his filing cabinet, in his desk drawer, or in his pocket, he has the right to know it will be secure from an unreasonable search or an unreasonable seizure."

In *Katz v. United States,* 389 U. S. 347, a case involving the accused's use of a telephone in a public telephone booth which had been electronically "bugged" by the police, it was held that "the Fourth Amendment protects people, not places"; and that what a person *justifiably* seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected from unwarranted governmental intrusion.

In *Mancusi v. DeForte,* 392 U. S. 364, a case involving a warrantless search of a business office shared by the accused with others, it was held that the capacity to claim the protection of the Fourth Amendment "depends not upon a property right in the invaded place, but upon

whether the area was one in which there was a *reasonable* expectation of freedom from governmental intrusion."

It was with these principles in mind that we decided *Brown v. State*, 3 Md. App. 90. There, a police officer, while making a routine police check in the men's rest room in a tavern, observed a known drug addict standing in a partially enclosed toilet booth; the officer put his head over the door of the booth and observed narcotics paraphernalia. We stated the question to be whether such a physical intrusion into the area "constituted a trespass or unlawful entry so as to make the observation unlawfully obtained." Noting that that question was to be resolved, not upon the technicality of a trespass as a matter of state or local law, "but upon the reality of an actual intrusion into a constitutionally protected area," we held, in excluding the evidence: (page 94)

> "* * * a person who enters an enclosed stall in a public toilet, with the door closed behind him, is entitled, at least, to the modicum of privacy its design affords, certainly to the extent that he will not be joined by an uninvited guest or spied upon by probing eyes in a head physically intruding into the area."

That there may be circumstances, as in *Brown,* where a person is afforded Fourth Amendment protection from unwarranted governmental intrusion into *particular areas* within a public rest room, does not mean that an individual who may intend to avail himself of exclusive occupancy of the whole of such a public facility is thereby constitutionally insulated for as long as he wishes from unwelcome scrutiny of his actions. *See Bielicki v. Superior Court*, 371 P. 2d 288 (Sup. Ct. Cal.) ; *Britt v. Superior Court*, 374 P. 2d 817 (Sup. Ct. Cal.) ; *State v. Bryant*, 177 N.W.2d 800 (Minn.), and cases cited therein. Compare *Smayda v. United States*, 352 F. 2d 251 (CA 9), *cert. den.* 382 U. S. 981; *Mitchell v. State*, 170 S.E.2d

765 (Ct. App. Ga.). Assuming it not unreasonable for a person given the key to a rest room in a gas station to expect a measure of privacy therein, that expectation of privacy is necessarily limited to that which is justifiable and reasonable; and what that encompasses depends upon and is controlled by the circumstances of each case. At best, the expectation of privacy in a free rest room facility, or any part of it, which is intended to be accessible for public use cannot be other than temporary. And where, as in the present case, the facility was plainly designed to permit multiple usage by members of the public who might be granted admittance thereto by keys controlled by the proprietor, no reasonable person would be justified in expecting absolute privacy in, or exclusive use of, the whole of such a facility, particularly where the length of such occupancy and use far exceeded, as here, normally permissible limits. *Cf. Mancusi v. DeForte, supra.* Without question, after the three men had been using the rest room for thirty minutes, the attendant had the right to enlist the aid and assistance of a police officer to determine their fate. That in such circumstances the officer should simply unlock the door and enter can hardly be condemned as an unwarranted governmental intrusion, or characterized as lawless police conduct. Indeed, it does not appear from the record that the officer intended to conduct a "search" in the constitutional sense (*see St. Clair v. State,* 1 Md. App. 605); rather, it is suggested that entry was made out of concern for the physical well-being of the men (*see Davis v. State,* 236 Md. 389). But as "there is no war between the Constitution and common sense," *Mapp v. Ohio,* 367 U. S. 643, 657, we hold, without regard to the officer's motivation in entering the rest room, that he violated no constitutionally protected right of appellant to privacy under the Fourth Amendment. *Cf. Stoner v. California,* 376 U. S. 483. Accordingly, the evidence secured by him was properly admitted at the trial.

*Judgments affirmed.*