## NATHANIEL BROOKS, ROSCOE EDWARD KEATON AND HOWARD LEE PATTERSON *v.* STATE OF MARYLAND

[No. 649, September Term, 1970.]

*Decided October 18, 1971.*

152

The cause was submitted on briefs to ORTH, THOMPSON and CARTER, JJ.

Submitted by *Morris L. Kaplan* and *Michael Lee Kaplan* for appellant Nathaniel Brooks, *Gerald A. Kroop* for appellant Roscoe Edward Keaton and *Richard G. Bartholomee* for appellant Howard Lee Patterson.

Submitted by *Francis B. Burch, Attorney General, Gilbert Rosenthal, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *David Simonson, Assistant State's Attorney for Baltimore City,* for appellee.

THOMPSON, J., delivered the opinion of the Court.

Nathaniel Brooks, Roscoe Keaton and Howard Lee Patterson, the appellants, were all convicted of violations of the narcotics laws in a court trial before Judge Charles D. Harris in the Criminal Court of Baltimore; total sentences of three years were imposed on each appellant. Brooks was also convicted of assault in addition to the narcotics violations, but no appeal was filed from this conviction.

The only substantial question presented on appeal is did the trial judge err by denying a motion to suppress evidence obtained in an illegal search?

On April 17, 1970, four days prior to the raid involving the appellants, there was a raid of the same premises, the second floor apartment of 643 South Paca Street, Baltimore City. The first search and seizure was made pursuant to a search warrant which had been issued on the affidavit of Officer Wayne Harris. During the first search and seizure, David Miller, the lessee of the apartment, was arrested, charged with and convicted of possession of heroin and narcotic paraphernalia. During this first search, Officer Harris observed but did not seize various items, including rings in a display case, a portable radio, a car radio and a portable television. At

the time, these items signified nothing to Officer Harris; however, subsequent investigation revealed that these were stolen goods.

Upon discovering the items to be stolen, Officer Harris applied for a second search warrant based on his observations and investigation. The application for the second warrant recited the issuance of the first warrant, but a copy of the first warrant and the application therefor were not attached to the second application. A Judge of the Municipal Court of Baltimore City issued the second warrant for the premises. While executing this second warrant, the police, led by Officer Harris, apprehended the appellants for the instant violations. The officer had no prior knowledge of appellants' presence in the premises nor of their activities.

Appellants contend that the trial court erred for failing to grant their motion to suppress evidence. Their argument is that the validity of the second search warrant depends on the validity of the first search warrant; therefore, probable cause for the first search warrant must be established in the affidavit for the second search warrant. The trial court ruled that the burden of proof was on the appellants to prove the first search warrant was invalid. Further, the court held that since David Miller had been convicted after the execution of the first search warrant, that the conviction established the validity of the first warrant. The court was in error in both rulings.

The issues involved in this case border between two closely related basic concepts of the law governing search warrants. The first concept is that conclusory statements without underlying facts by the affiant that probable cause exists, are not adequate to support the issuance of a search warrant. *Grimm v. State*, 7 Md. App. 491, 256 A. 2d 333, *Frey v. State*, 3 Md. App. 38, 237 A. 2d 774, *Scott v. State*, 4 Md. App. 482, 243 A. 2d 609.

The second basic concept is that probable cause must be determined by the magistrate, based on the facts presented to him in the affidavit. *Md. Code*, Art. 27, § 551,

*Hall v. State,* 5 Md. App. 394, 247 A. 2d 548, *Clayton v. State,* 1 Md. App. 500, 231 A. 2d 717, and *Henderson v. State,* 243 Md. 342, 221 A. 2d 76.

These basic concepts were effectively summarized by this Court in *Grimm v. State, supra,* at 493:

> "It is well settled that the Fourth Amendment requires that a search warrant be issued only after a neutral and detached magistrate himself sifts the facts presented to him by policemen to determine whether probable cause exists for the issuance of that warrant. *Johnson v. United States,* 333 U. S. 10. Obviously, to sift properly, the issuing magistrate must have the relevant facts before him which the affiant alleges as the basis of probable cause; otherwise, the magistrate would be obliged to accept the affiant's conclusions and thus would 'serve merely as the rubber stamp for the police.' *Aguilar v. Texas,* 378 U.S. 108, 112."

Factually similar to the instant case is *Frankis v. State,* 11 Md. App. 534, 275 A. 2d 532, wherein an F.B.I. agent, while executing a federal search warrant for unrelated crimes, observed a certain gas stove. Sixteen months later, the agent discovered the stove to be stolen. At defendant's trial for storehouse breaking concerning the stove, the agent was called to testify concerning his observation of the stove on defendant's premises during the search and seizure under the unrelated federal search warrant. This Court said that the propriety of the presence of the F.B.I. agent in the residence of appellant on the day of the search and seizure, so that the agent would be in a position to legally observe the gas stove, is based upon the adequacy of the probable cause set out in the application for that search warrant. This Court then considered the adequacy of probable cause for the original search warrant and did not accept the legality of that warrant without question.

Here, as in *Frankis,* the probable cause for the original

search warrant must be found and the officer's statement that the original warrant was issued cannot alone sufficiently support the conclusion. There must be a presentation of underlying facts.

The same logic which requires a showing of the underlying circumstances when probable cause is based upon hearsay or informers, applies, when a police officer seeks to use observations made during one search as grounds for a subsequent search warrant. The ultimate decision must rest with the issuing judge and to the extent that the affiant is allowed to present unsupported conclusions, he converts the issuing judge into a rubber stamp. As with hearsay and informers, to make a valid and intelligent decision, the issuing judge must have the appropriate background facts. To allow otherwise would be to condone that type of bald conclusory statement by the affiant that his conduct was legal and based upon sufficient probable cause, that was specifically condemned in *Grimm v. State, supra.*

In this case, the affidavit for the second search warrant says only that the first search warrant was signed; this does not present to the second issuing magistrate, underlying circumstances sufficient for him to reach his own independent conclusion.

Our conclusion is supported by *Duggins v. State,* 7 Md. App. 486, 256 A. 2d 354, holding that where the validity of a seizure depended on the validity of an arrest warrant, that warrant, if properly challenged, must be produced by the State. We rejected the argument that the testimony of the officer serving the warrant was sufficient to show its validity.

The trial judge in the instant case noted that the conviction of David Miller as a result of the first search of these premises showed the validity of the first search warrant. It is not clear from the record that the conviction was introduced into evidence. See *Corbett v. State,* 4 Md. App. 269, 242 A. 2d 603, as to impropriety of judicial notice of trial court records. Since this fact appears nowhere in the affidavit for the second search

warrant, it cannot be used to support this search warrant since the validity of a warrant must be determined by what appears within the four corners of the affidavit. *Silbert v. State,* 10 Md. App. 56, 267 A. 2d 770. In so discussing this point we do not suggest that a recital that the first warrant resulted in a conviction would make the second warrant valid. The proper way to determine the validity of the first warrant is to have a sworn or certified copy of it and its application attached to the second search warrant.

It was stipulated below the appellants had no proprietary interest in the premises; two of the defendants testified they went into the apartment for the purposes of theft when they heard the lawful occupant was in jail. The State argues on appeal the appellants had no standing to question the validity of the search warrant. The question as to who has standing in state courts to object to an illegal search has been the subject of much discussion. *Mills v. State,* 12 Md. App. 449, 456, 279 A. 2d 473. *Walters v. State,* 8 Md. App. 583, 588, 261 A. 2d 189, 78 A.L.R. 2d 246 (Later Case Service). 118 U. Pa. L. Rev. 333, 343 (1970) and 50 Geo. L. J. 585, 593 (1962). There is no need for us to add to the discussions here because even if we assume the appellants had standing to complain it is obvious they were trespassers and as such were not in a place where they had the right to expect privacy. *Mancusi v. DeForte,* 392 U. S. 364, 88 S. Ct. 2120, 20 L.Ed.2d 1154, *Katz v. U. S.,* 389 U. S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576. *Middleton v. State,* 10 Md. App. 18, 29, 267 A. 2d 759. Compare *Kirsch v. State,* 10 Md. App. 565, 271 A. 2d 770. Thus, the motion to suppress the evidence seized was properly denied.

The remaining questions require little discussion:

## I

We hold the evidence was sufficient to support the convictions for possession of narcotics and narcotic paraphernalia. Two of the appellants were found in the apartment as the officers entered. The third was observed

running from the second floor to the third floor. All had needle marks. In open view within the apartment were thirty-three hypodermic syringes as well as other paraphernalia and a quantity of narcotics. *Haley v. State,* 7 Md. App. 18, 253 A. 2d 424 is not controlling because in that case the contraband was not in plain view and there were no needle marks on the appellants to support the convictions. See *Anderson v. State,* 9 Md. App. 639, 267 A. 2d 302 and *Broadway v. State,* 3 Md. App. 164, 237 A. 2d 820.

## II

The contention that the admission of a hypodermic syringe and narcotics found later in the evening on the street outside the building, was error is without merit. Evidence need not be positively connected to an accused to be admissible, *Veihmeyer v. State,* 3 Md. App. 702, 240 A. 2d 649. There is no question in the instant case as to the sufficiency of this evidence alone to support the convictions.

## III

When counsel objected to the chemist's report at the trial below he specifically stated the objection was not on the basis of hearsay. He cannot on appeal raise the question as to its hearsay character. Md. Rule 1085.

## IV

An examination of appellants' arms for needle marks after a lawful arrest for narcotics violations is not an unreasonable search and testimony as to what the search revealed is admissible. A contemporaneous search of the arrestee's person for evidence after lawful arrest is ordinarily permitted. *Scott v. State,* 7 Md. App. 505, 507, 256 A. 2d 384.

## V

An experienced narcotics officer is qualified to express an opinion that puncture scars on a subject's arms were made by hypodermic needles. See *Harding v. State,* 5 Md. App. 230, 246 A. 2d 302 and *Mullaney v. State,* 5 Md. App. 248, 246 A. 2d 291.

## VI

Appellant Patterson's counsel elected a court trial in his presence. There was no objection below and the question of his right to a jury trial is not before us. Md. Rule 1085. *State v. Zimmerman,* 261 Md. 11, 273 A. 2d 156.

*Judgments affirmed.*