# BETTY JEAN KRAFT *v.* STATE OF MARYLAND

[No. 86, September Term, 1972.]

*Decided December 4, 1972.*

The cause was argued before THOMPSON, MOYLAN and POWERS, JJ.

*Neal P. Myerberg* for appellant.

*Gary Melick, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Joseph D. Weiner, State's Attorney for St. Mary's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Betty Jean Kraft, appellant, was convicted by a jury in the Circuit Court for St. Mary's County for violations of state laws concerning controlled dangerous substances. The only evidence presented against her was obtained as a result of a search of the apartment wherein she resided and a seizure of contraband pursuant to a judicially issued warrant. We need discuss only her challenge to the legality of that search and seizure as we have determined that the exclusionary rule must be invoked and the judgments against her reversed.

The warrant issued on the basis of an integrated Application and Affidavit prepared by two deputy sheriffs of St. Mary's County. The application prayed a warrant to search a residence located at 6 East Rennell, Lexington Park, St. Mary's County and which was occupied by Betty (Blaylock) Kraft and David Thompson. In support of their application the affiants presented the following facts and circumstances quoted verbatim:

> "That on or about 1 September 1971, one; Peter Fletcher, a known and convicted Heroin user was seen at this apartment. Further that on the 3RD of October 1971, information from a reliably established informant, who is responsible for eleven narcotics arrests, states that the Thompson subject is making trips to the Wash. D.C. area twice weekly to obtain narcotics, and is transporting them back into the

County. Further, this informant states that he has personally observed the Thompson subject with 100 units of LSD on the 2ND of October 1971.

"Further, that on 4 October 1971, information from a second informant, who has provided reliable information to this Dept. for the past six months, and who has also purchased LSD and other narcotics from the Thompson in the past states that he had seen large quantities of LSD and amphetamines in the Thompson apt. on 3 October 1971. Further, on 6 October 1971, this same informant states that he personally observed a large quantity of LSD, described as; White Lightnings, and Orange Paradise, in a tin can in the refrigerator in the Thompson apt.

"The Kraft subject residing at this address is known by Dept. Clarke to be an admitted user of Heroin."

Any determination of probable cause must be made solely from information contained within the four corners of the application. *Buckner v. State,* 11 Md. App. 55, 272 A. 2d 828; *Lashley v. State,* 10 Md. App. 136, 268 A. 2d 502. In considering an application for a search and seizure warrant, the judicial officer may find the probable cause necessary for its issuance from a statement by the affiant of his direct observations or by hearsay information provided the affiant, by a named or unnamed informant or a combination of direct observation and hearsay information. *Moore v. State,* 13 Md. App. 711, 284 A. 2d 614; *Dawson v. State,* 11 Md. App. 694, 276 A. 2d 680.

Although we must interpret an affidavit in support of a search warrant in a common sense and not in a hypertechnical manner, *U.S. v. Ventresca,* 380 U. S. 102, 85 S. Ct. 741, 13 L.Ed.2d 684, this does not mean that we are free to disregard the technical requirements of *Aguilar v. Texas,* 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723,

as interpreted by *Spinelli v. U.S.*, 393 U. S. 410, 89 S. Ct. 584, 588, 21 L.Ed.2d 637, and *U.S. v. Harris*, 403 U. S. 573, 91 S. Ct. 2075, 29 L.Ed.2d 723. In order to comply with these cases we proceed to make a detailed examination of the affidavit.

Other than the first sentence referring to Fletcher and the single-sentence last paragraph referring to Kraft, the recitations in the affidavit purport to present hearsay information provided the affiants by two unnamed informants. For such information to qualify as a basis for a finding of probable cause for the issuance of a search and seizure warrant, with respect to *Aguilar's* first prong there must be enough facts and circumstances presented to enable the judicial officer to make an independent determination that the informant was credible or his information otherwise reliable. See *Kist v. State*, 4 Md. App. 282, 242 A. 2d 586. This requirement does not necessarily mean that the statements be voluminous nor that they provide intricate detail. It does demand of the applicant a presentation of facts and circumstances such that the judicial officer considering the application can determine that the informant was credible or his information reliable before that informant's revelations can show probable cause. See *Dawson v. State*, 11 Md. App., *supra*, at 699.

Of the first unnamed informant it is here said, he is "a reliably established informant; who is responsible for eleven narcotics arrests," the second, is introduced as one "who has provided reliable information to this Dept. for the past six months." We shall see that these general conclusionary assertions are insufficient of themselves to establish the reliability of these informants.

In *Iannone v. State*, 10 Md. App. 81, 267 A. 2d 812, we held the conclusionary statement "a confidential informant who has furnished information which has proven to be reliable in the past" was insufficient to establish credibility under *Aguilar v. Texas, supra*. In *Moore v. State, supra*, we held a bare assertion that prior infor-

mation had led "to arrests and convictions", if not particularized, was insufficient. On the other hand we held in *Watkins v. State,* 7 Md. App. 151, 253 A. 2d 925, an allegation of "arrests" sufficient where very specific collateral details were furnished enabling the magistrate to make an informed judgment as to the informant's reliability. In the instant case the assertion that the first informant "is responsible for eleven narcotics arrests," unsupported by further detail would not enable the magistrate to conclude that that informant was credible or his information reliable. He was not told whether the cases had been tried or, whether they had resulted in acquittals or convictions. The magistrate was not informed whether materials found at the time of the arrests corresponded with the information supplied by the informant. He was not apprised as to the police assessment of the value of the information furnished by the informant, e.g., whether it amounted to more than an underworld rumor which, to be of any value, would have to be corroborated by independent information. The magistrate was not informed whether the informant's previously furnished information had always proved correct. See concurring opinion of Moylan, J. in *Dawson v. State,* 14 Md. App. 18, 284 A. 2d 861 at 870.

Referring to the second informant, it is clear the "reliable information" is too general to support reliability under *Moore v. State, supra.* The affidavit further says that the second informant has "purchased LSD and other narcotics from the [sic] Thompson in the past." While admission of crime by an undisclosed informant may be an element to consider in determining that informer's credibility, *U.S. v. Harris, supra,* here the assertion of generally related criminal activity in the indefinite past cannot lend credibility to an informant who is baldly alleged to be reliable. See *Hudson v. State,* 16 Md. App. 49, 66, 294 A. 2d 109; *Cuffia v. State,* 14 Md. App. 521, 287 A. 2d 319; *Kates v. State,* 13 Md. App. 688, 284 A. 2d 651; *Holland v. State,* 13 Md. App. 635, 284 A. 2d 874; *Kane v. State,* 12 Md. App. 466, 280 A. 2d 9.

As to remoteness in time see, *Johnson v. State,* 14 Md. App. 721, 288 A. 2d 622.

Although the statement "[t]hat on about 1 Sept. 1971, one; Peter Fletcher, a known and convicted Heroin user was seen at this apartment," would add some slight support to the informants' information, unfortunately the statement is deficient in that the observer is not identified. We cannot make the assumption that the observer was one of the affiants; the affiants could well have received this information from others. The final statement that "[t]he Kraft subject residing at this address is known by Dept. Clarke to be an admitted user of Heroin" is as bald and unilluminating an assertion as the statement "entitled to no weight" that "William Spinelli is known to this affiant and to federal law enforcement agents and local law enforcement agents as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers." *Spinelli v. United States, supra.* See *Grimm v. State,* 7 Md. App. 491, 256 A. 2d 333. Here, there is absolutely nothing to indicate the source of the officer's "knowledge" concerning the "Kraft subject."

The credibility of an unnamed informant is at best, suspect. Where, as here, the informers were not shown to be reliable, and there are no legally competent facts, circumstances or observations to add to their information, we cannot say that a prudent and cautious man would be justified in finding probable cause to believe that an offense was being committed at the residence sought to be searched. *Grimm v. State,* 6 Md. App. 221, 251 A. 2d 230. Of course, the allegations of personal observations by each of the unnamed informants would have supported the finding of probable cause had their reliability in some way been established, or their information corroborated.

In light of our finding that the recitals were insufficient to show the reliability of the informants and in the absence of any other reliable information to corroborate the informants' information, appellant's convictions must be reversed. As it would be impossible to convict appel-

lant without the illegally seized evidence, we will reverse the case without awarding a new trial.

*Judgments reversed.*
*Costs to be paid by the County*
*Commissioners of St.*
*Mary's County.*